We'll hear argument first this morning in Case 15-1439, Cyan v. Beaver County Employees Retirement Fund. Mr. Katyal. Thank you, Mr. Chief Justice, and may it please the Court. Congress in 1998 reacted to a new problem. After its 1995 Reform Act, which dealt with the crisis of abuse of federal claims in federal court, plaintiffs had responded by shifting their litigation to state court. The upshot was that the pre-'95 abuses were happening. They were just happening in state court. Congress in the Securities Litigation Uniform Standards Act, SLUSA, took three steps. First, it precluded certain causes of action. Second, it modified its anti-removal bar. And third, it eliminated concurrent jurisdiction for many 33-Act federal claims in state court. Respondents disagree with this third one, but the text, structure, and purpose are all against them. And the best way of understanding our argument is this. If Beaver County brought the exact same complaint that they did here, alleging a Federal 33-Act claim, but did one thing differently, they also brought a state law claim, they'd be knocked out of state court. That's their own reading. But, they say, because they didn't bring their state law count, they are now the state law claim, they are now entitled to bring their Federal claim in state court. That makes zero sense. Ginsburg. Well, one could say, with respect to your argument, that Congress chose a rather obtuse way of saying that Federal courts shall have exclusive jurisdiction. It could have simply said, in covered class actions, related to claims under the 33-Act, Federal courts shall have exclusive jurisdiction, period, and that would be clear and everybody would understand, and you would prevail. But Congress certainly took an odd route to getting there. Justice Ginsburg, we agree with you that this is an obtuse way of getting there. And, you know, this body could have written a much better statute than our friends across the street or so on. But I do think it's the best way of understanding the text. I'll explain why in a moment. And as I was saying a moment before, the anomaly on the other side is far worse. This would then be, in no other statute that they point to that I've ever heard of, does bringing a state count force you out of state court? But that's their reading. And if Congress is going to do something that strange, you would expect them to have said so. Sotomayor, I'm sorry. I thought the whole purpose, the main purpose of Slusha was just that, to ensure that claims of this particular type were not covered under state law, but covered under Federal law. If I accept that that was the main purpose of Congress's position, what difference does it make who adjudicates the claim if both courts are going to be bound by Federal law? Justice Sotomayor, we disagree with the premise and what it eventually leads you to in your question to me in terms of your conclusion. So we disagree that the main purpose was preclusion or state claims. They pointed to nothing saying so. And I'll walk you through the actual statutory findings in the text of the statute, which I think rebelled at that. And then even if it were a main purpose to deal with the precluded claims, there's certainly nothing to exclude. And I think there's legislative history and the statute itself is pretty clear that Congress also had in mind the abuse that was going on because these Federal claims were being brought to state – were being brought in state court. And, you know, the text of the statute itself, Justice Sotomayor, says that. Sotomayor, doesn't your reading contain an inherent contradiction? If the First Clause is supposed to preclude or give exclusive jurisdiction to the district courts over all covered class actions, which under your reading includes even those that are not Federal, why then have the second except? Isn't there a tension between the two? No, I don't think there's a tension. As our reply brief, you know, I think outlines, it's exactly actually the compromise that was struck in the 34 Exchange Act, because these are things that – Well, there's an inherent tension in the two except clauses. Otherwise, what you're giving – you're saying the second except helps you, but they're contradictory. I don't think they're contradictory. I think that what our reading does is leave the 33 and 34 Acts in exactly the same position, that is to say that both of them say if you're bringing a Federal claim, either 33 or 34, you can't bring it in state court. You're ousted of jurisdiction. I'm sorry. Your reading of that first except clause is that it covers all covered class actions as defined in P.F. 2. P.F. 2 defines covered class actions only as those that have 50 or more people, a certain amount of damages. Correct. That could include Federal or state law claims. Under your reading, this reference to except is definitional, P.F. 2. Justice Sotomayor, you're right to say that under our reading, the except – the jurisdiction that is ousted of the state court is greater than what is precluded by Congress. That was intentional. What I'm trying to say is that's exactly what happened in the 34 Act, and it's done so for a good reason, because as this Court said in Chadbourne, when Congress is precluding something, that's very strong medicine. That's them saying to states, you can't have this law at all, this substantive law. But when we're talking about jurisdiction over Federal claims, Congress is the master of that, and they can decide, you know, where to bring a case and so on. Now, you had asked about the legislative history, and I want to get back to that because – and the purpose, because I do think it is very strong. The purpose is found in our blue – the statutory findings are in our blue brief at page 20. I want to – I'll say three of them. This is the text of the statute. Sorry. Could we just talk about the text before we speak about the purpose? Sure. Which goes, you know, except as provided in 77P, the natural way to read that is we look at 77P, the whole thing, and we see what's the except that's provided in. We don't look to an ancillary definitional provision that all it does is define a term. We look for a rule that might be in conflict, that could be taken to be in conflict with the jurisdictional provision. Right. So, you know, it just seems as though your interpretation does a very odd thing textually when you read except as provided in section 77P to say let's look to a definition in that section. So, Justice Kagan, you're reading from section 22A, the except clause, which is also 77VA. It's found in our blue brief at page 8A, and you're absolutely right that the clause says except as provided in section 16, and you can say if that alone, which is the part you read to me, were enough, you would say, well, do you look to the definition? It's unclear. But it's more than that, because then it says with respect to covered class actions. So there are two halves to this except clause. The first half, as you're right, is to say point you in the direction of where to look, but it's the second part, with respect to covered class actions, that I think our reading gives effect to these words and theirs does not. That is, it points you in the direction of where to look. Alito, I have a similar concern as Justice Kagan. Our late colleague wrote a book called Reading Law, which provides guidance about how you read statutes. And I looked through that to see what we are supposed to do when Congress writes gibberish, and that's what we have here. You said it's obtuse. That's flattering. We have very smart lawyers here who have come up with creative interpretations, but this is gibberish. It is just gibberish. It says the provision that was read says that the State courts have jurisdiction over Federal claims, except as provided in section 77P, which says nothing whatsoever about jurisdiction for State for Federal claims. So what are we supposed to do with this? So, Alito, I think I'd say three things about that. First is, as I was saying to Justice Ginsburg, I don't think the statutes by any stretch a model of clarity, but I don't go so far as to say it is gibberish. Your late colleague in that book did talk about how if you really can't figure it out, then you look to, for example, the statutory findings, that even as a textualist as he was said, you know, look to that to try and figure out what Congress was getting at. And this returns me to Justice Otomayor's claim and question in the blue brief at page 20, because the statutory findings really do tell you, I think, what Congress is doing. They're as follows. Quote, "...since enactment of that Reform Act legislation, considerable evidence has been presented to Congress that a number of securities class action lawsuits have shifted from Federal to State courts. And then, this shift has prevented that Act from fully achieving its objectives. And then, it is appropriate to enact national standards while preserving the appropriate enforcement powers of State securities regulators and not changing the current treatment of individual lawsuits." Sotomayor, I'm sorry, that says nothing about ousting the State courts. It says providing national standards that will control State enforcement agencies. So whether it's State court or Federal court, it's still the same national standards. Katyal, it's not the same national standards because Congress cared very much about the procedures. The whole Reform Act did things like, say, you can't have professional plaintiffs, there are limits on attorney's fees, all sorts of stuff. Sotomayor, what's very clear in the Act is that there are certain sections that were clearly intended to be national, certain things that were and were not covered, and then there were, you're right, some procedural aspects. But nowhere in those procedural aspects did Congress say they have to be followed both in State and Federal court. In the Reform Act, you're absolutely right, but I do think that is the way of understanding what SLUSA was doing. It's precisely because they weren't followed, Justice Sotomayor, in State court. Sotomayor, can we go back to your definition? A covered class action under, I call it 77P, just easier for me, has a bunch of different subsections. You're relying on the definitional one. But each of the pertinent ones also talks about class action limitations, removal of covered class actions, by referencing P in its entirety. What is either illogical, contextually wrong, or improper about looking at all of the provisions of P that talk with respect to covered class actions? Because B and C are certainly talking with respect to covered class actions. So I certainly agree with you, Justice Sotomayor, that when Congress used the entire point to the entire clause, it can point to any part of the clause. You know, and I think the definition does give you the best indicia of it. But there's nothing that says that you should only look, as my friend on the other side does, says only look at the preclusion provisions. After all, these are about preclusion. No, he's not doing that. He's saying you look at every provision that mentions or talks about the covered class action. And if you did, and then you'd look to the definition as well, and that would say, as I was saying to Justice Kagan, except as provided in section 16, so you look to section 16, with respect to covered class actions, and look to what that is. Kagan. You're right, Mr. Katyal, it would be written something like, except with respect to class actions, as defined in, not as provided by, as defined in 77PF2, not just 77P. So there are two ways in which your reading really does seem at odds with the statutory text. First, by not saying the text says provided in, you're saying defined by, and second, what the statute makes clear, you look to 77P as a whole, not to some sub-sub section within it. Katyal, so I don't think either of those means that our reading is at odds, Justice Kagan. I think all that suggests is, is that, you know, as I was saying to Justice Ginsburg, Congress had other ways of writing the statute that are clear, that could have been clearer. But this Court confronts this, and this returns to Justice Alito's question, all the time, in big cases like Burwell, in small cases like Perry v. Merit Systems Protection Board last term, you're dealing with a statute that maybe, if you look at it one way, it's gibberish. Maybe some of you could have written it better, but it still has to be given some meaning. Now, our reading of 22 of the 1933 Act claims that could be brought, Federal claims under the 1933 Act, that could be brought in State court. Absolutely, Justice Ginsburg. And that's why, to return to your first question, why Congress didn't say exclusive jurisdiction, as they did in the 1934 Act. Congress and SLUSA took care, and this is finding five that I had read to Justice Otomi earlier, to say, look, we want to preserve the vast majority of concurrent jurisdiction in State courts. That's individual lawsuits and class actions that aren't covered. So that's derivative actions, or actions not seeking money damages, or actions for fewer than 50. But if you accept their reading, what you're essentially doing is saying, look, Congress, in this statute, they built this super safe house, you know, in SLUSA, with a front door that was locked, that had alarm systems to bar against Federal court abuse of Federal claims, that's the Reform Act. And then the side doors, they locked because they were worried about State court abuse and Federal court abuse of State law claims, that's Justice Otomi's point. But they didn't even build the back of the house. They didn't build even a door to deal with the problem of all of this being repleted now in State courts, these are Federal claims. Kagan. Kagan. You're forgetting that most Securities Actions are Exchange Act actions. They're not Securities Act actions. And for that, Congress did everything it wanted, because Exchange Act actions are all in the Federal courts. There is exclusive jurisdiction there. So essentially what was happening was that in Exchange Act actions that section of that exclusive jurisdiction was being compromised by the ability of people to bring State law actions, and Congress completely shut that down. So Congress did everything it wanted with respect to Exchange Act actions, which are the lion's share of Securities lawsuits. Justice Kagan, I don't know about lion's share or not, but it is very clear, manifestly clear, that SLUSA dealt with both problems, 33 and 34. There are two separate titles that deal with this. And there's a good — as the amici here say, this is a huge problem on the ground. You know, the Alibaba brief says that 50 percent now of these 33 Act claims involving IPOs, which, you know, if it's an IPO, it's usually a 33 Act claim, 50 percent of them have parallel Federal and State court litigation. Let me ask one textual question and one purposive question. The textual question — think of V, okay? And V, it talks about acceptance provided in 77P, it's out in cover. Suits in equity and actions at law, does that phrase specifically refer to the 33 Acts? It says the 33 Acts? Yes. So it says — it's all actions at law in the next words, and, again, I'm reading at blue brief, page 8A, we're reading 22A or 77BA, actions at law brought to enforce any liability or duty created by this subchapter, created by this subchapter. Well, does this subchapter mean 34, 33, or is it ambiguous? It's not ambiguous, Justice Breyer. It is modifying the 33 Act, and that is crucial to our argument. Yes, it is crucial. Okay, yes, yes. Your argument is stronger with that. Absolutely. The title of this Act is called — this provision is called jurisdiction of offenses and suits. It is about Federal claims. Okay, my question is to the other side. The — on the purpose, I assumed that you put the strongest legislative history argument you could find on page 20 of your brief, and that's what President Clinton, when he signed it and so forth, all that stuff you have there. And it seemed to me, in reading through the legislative history, I couldn't find anything that really makes clear that it's referring to the 33 Act. It could be just referring to the 34 Act, I think. Is there something you want to point me to that would absolutely make clear that this is referring to the 33 Act? I think the conference report does, in its very first lines, and I think it is talking about both the 33 and 34 Act. And there's no — It's absolutely clear on — it's pretty clear on that. I do think it's clear. I think that, you know, that — I mean, in Congress, again, this returns to my point to Justice Kagan. All right, okay, okay. I'll go read that. I'll read it. My textual argument question is this. My textual question is that what I think your argument, but perhaps not the government's argument, requires us to read C in a pretty unnatural way, that's P.C. C, because it says, as set forth in subsection B. So what you want us to do is to look at subsection B, and you take that as referring to, which is possible, but it's tough, not having the words, based upon statutory or common law of any State. You see, because if it picks that up, well, then all we're talking about is those actions that have the State action within it are removable, which explains the anomaly that you started out with, and it would just be an anomaly, and you'd say, well, it isn't a practical anomaly, because no sensible lawyer is going to include the State one anymore. He'll just include the 33 one. So how do I deal with that textual problem? Certainly, I think the Solicitor General's way of dealing with that is available to you, but I think that our argument does not depend on, you know, on reading the removal provision the way it does. All our argument depends on it's a straightforward reading, and it, you know, I understand Justice Kagan. Breyer. It says, A, covered security, as set forth in subsection B. Now, there are commas around the B, around that phrase I just read. I agree. But the most natural thing is it's referring to those covered actions that are referred to in B, and what it refers to in B are covered actions, all right, but they're involving State law. Right. So my only point to you is the first – our argument is really about the first half, the jurisdiction clause. And the jurisdiction clause is all you need to look at. It says that there's concurrent jurisdiction. That's what the 33 Act said. Except is provided in section 16 with respect to covered class actions. And so in order to decide does a State court have jurisdiction, you look to section 16, and you look to the definition of a covered class action. Our argument is that is, you know, it's not the, you know, the usual way provided is written. Justice Kagan's right to say that. But it's not such an unusual way. There are other statutes that do exactly this. You know, the National Guard statute and the scholarship statute, vessels and the like, our example about, you know, about parking that's in our reply brief at page 5. These are ways of doing this. And again, I think that, you know, if Congress was going to do what my friend on the other side says, which is to say that by bringing a State law count in your Federal complaint, you now are ousted out of State court, one would expect them to do this. Sotomayor, why not make the second except clause read identically? But the Congress didn't. Under your theory, assume somebody brings a 1933 Act claim in State court tied to a non-1933 State law action. Under your theory, what happens to that case? It can't get removed because under C, you can only remove those claims that are State law claims that are based on 1933. And this says you can't remove them. So now what happens? Right. Justice Sotomayor, you're exactly right that under our reading, the preclusion is narrower than the oust of jurisdiction in SLUSA, so that there is a category of cases, non-covered securities or claims that aren't about fraud, in which there is no preclusion, but we believe there is no State court jurisdiction over these Federal claims. So your theory is that on those claims, they just get ousted out of court, even though they have a non-covered, completely viable, non-33 State law action claim. Exactly. And that's exactly the balance. That's a fairly extreme result on a reading that bucks the presumption, and one that says we presume in favor of concurrent jurisdiction. So you're taking a very strong presumption, turning it on its head, and saying we're ousting State courts over jurisdiction of securities actions that have nothing to do with Federal law. So two things. That's what you're saying. Well, I don't think that's exactly right. So two things. Why is it not exactly right? Because, first, I don't think this is some anomalous reading. This is reading the 33 Act exactly the way the 34 does. Now, you say No, this Act does not preempt those State law, non-1933, non-Federal actions. Justice Sotomayor, with respect, it actually does. SLUSA has a removal provision and a preclusion provision for the 1934 Act. For those State law claims that relate to Federal claims, that relate to Federal law, it implicitly exempts out those that don't. With respect to State claims, it's precluding the 34 Act, it's precluding the same basket of State claims as the 33 Act, and the jurisdiction, the way we read it, is exactly the same. That is, that same category of cases, non-covered securities, non-fraud cases, there's no jurisdiction in State courts for them, but they are don't happen to be precluded under both the 33 and 34 Act. Exactly. And now, you had asked about the presumption about concurrent jurisdiction, and I don't think that presumption even applies here. Those cases that my friend cites are cases in which the statute silenced. Sotomayor, in what other situation where we do not have a Federal law that preempts a State law, have we ever permitted the Federal government to sell the States that they can't adjudicate a case under their own law? Well, my friend on the other side hasn't even made that argument, but I do think preclusion and preemption. I think it's a very natural argument. Under what? Preclusion and preemption are pretty natural concepts in the law. But it's not you just said to me, the 33 and the 34 Act do not preclude certain State law securities actions. If they are not precluded, how can we give a reading to this provision that would stop the State courts from adjudicating those cases? Justice Sotomayor, I'd caution the Court into adopting a ruling that would call into question the constitutionality of not just the 33 Act, but the 34 Act. No. You can pass a Federal law that says this Federal law precludes these actions. But if you don't have one that says that, how can you give a reading to this provision that would allow you to order the State court not to adjudicate a claim that is not precluded, that is expressly not precluded? The answer to this is found in the Senate report brief, Senate report at page 4, in which they said we are very concerned for Federalism reasons about preclusion because it's such strong medicine. But when we're dealing with jurisdiction, we have the ability to paint with a broader brush without interfering with Federalism principles. Here, we're only talking about Federal court causes of action. And all Congress is saying is that they are the master of that, and you can't bring those in State court when it's subject to very different standards than you can in Federal court. Ginsburg. Mr. Katyal, you make this, as I see, taking, allowing a State court to hear a Federal claim that shouldn't be there. But on your reading of this statute, the cure is in your own hands, because you would agree with the government that you could remove this case to Federal court, and then you'd have your Federal forum. But you didn't do that. You didn't. Katyal, so you're about to hear from the government about their theory. We do think it does solve a lot of the policy concerns that Congress was getting at. We think our textual reading is better because we actually give effect to the 12 words in the modification of Federal court jurisdiction. And so we think that's why you should adopt our reading over the Solicitor General's. If I may preserve. Roberts. Thank you, counsel. Mr. Katyal. Mr. Chief Justice, and may it please the Court. Petitioners are correct that Congress enacted SLUSA to reestablish Federal courts as the preferred venue for large-class actions involving nationally traded securities. But it did so not by eliminating State court jurisdiction over suits involving Federal claims, but by permitting removal of such suits from State to Federal court. Perhaps a good place to start, Justice Breyer, would be with your question about the removal provision and how under the text of that provision removal of actions that only involve Federal claims is permitted. And I think it's easiest to understand if you're looking directly at it, 77P, subsection C, on page 1A of the red brief. I think the question for the Court is whether the limiting clause as set forth in subsection B modifies the phrase immediately before it, involving a covered security, or instead modifies the phrase that comes at the beginning of the sentence, any covered class action. If it modifies any covered class action, Justice Breyer, I think you would be correct that what Congress would mean by that is the type of class action that's specified at subsection B, which would have all of the criteria, including that it would be pleaded under State law. But if we are correct that instead it modifies involving a covered security, then I think you would look to subsection B to answer the question, what type of connection to a covered security did Congress have in mind when it used that phrase? Breyer, why, if all they wanted, the parenthetical, as set forth in subsection B, that's the words we're talking about, right? That's correct. And it's in commas. That's correct. Well, why wouldn't they say as set forth and then they'd refer to 2A, the definition of covered class action? I think what we're talking about is not just the definition of covered class action.  It's a phrase that doesn't have its own definition. And to figure out what that means, you look at B-1 and B-2, which talk about certain types of misconduct in connection with the purchase or sale of a covered security. We think that's true. But then, suppose, involving a covered class action. But it's not involving a covered class action. It's involving a covered security. Involving a covered security. We think for a few reasons it makes the most sense to read the limiting clause as applying to that phrase. First of all, based on the rule of the last. So now I understand your argument, but it still doesn't really fit with B-1 and 2. I mean, if it were just involving a covered security as set forth in subsection B, you would look to something which told you what a covered security is. But B-1 and 2 don't do that. They talk about, you know, the kind of conduct that's illegal. That's right. Because it's not just modifying covered security. It's modifying the phrase involving a covered security. And you have to figure out what does it mean to involve the security in the relevant sense. Perhaps it would be useful to consider an example of a hypothetical statute in which Congress imposed liability for, quote, impeding interstate commerce as set forth in section 100. In that case, I think you would want to look to section 100 and the type of impeding acts that are described there to tell you what it means to impede in the relevant sense. Breyer. Your point is involving a covered security. That's right. So you have to both know what a covered security is, and you also have to know is what kind of involvement. That's right. The first part is very important. And so for covered security, you could have just referred to 3 where they defined it. But you have to know a second thing, which is how is it involved. That's correct. And 1 and 2 in B tell you how it is involved. That's right. We think that's the better reasoning, first, based on the rule of the last antecedent, under which the limiting clause is most naturally applied to the thing that comes immediately before it, rather than to something that comes earlier in the sentence. Ginsburg. Could you pass on that in a case where there was no effort to remove? Removal isn't part of this case. That's right. It's not squarely presented, but we do think that it's covered by the question presented in the following sense. Both Petitioners and Respondents make structural arguments about the relationship between the accept clause and the anti-removal provision in the penultimate sentence of 77V, subsection A. And this is an explanation that responds to both of those arguments. Moreover, Petitioners make a very powerful policy-based argument that Congress could not have intended for Federal claims to be stuck in State court where they wouldn't benefit from the protections of the Reform Act. That was the whole point of SLUSA. This is also a powerful response to that. In addition, we do think that it would be very useful to the lower court. So you understand the legislative history that Justice Breyer was asking about is relevant to the 33 Act, not just the 34 Act? That's right. Congress was concerned about both Acts. In addition to the rule of the last antecedent, I would point to the fact that in between our two candidates for the limiting clause, any covered class action at the beginning of the sentence and involving a covered security later on, there's an intervening phrase, brought in any State court. And that phrase doesn't have any obvious analog in subsection B, which, as the court is well aware, applies regardless of whether you're in Federal or State court. And we think that strengthens the inference that the limiting clause should be applied to the thing adjacent to it. Kagan. Kagan. I just want to get the best version of your argument. Sure. One and two involve a covered security because what? Because they involve certain types of misconduct in connection with the purchase and sale of a covered security. In other words, what does it mean to involve a covered security in the sense that's relevant for the removal provision? It has to have an omission with regard to that covered security, a false statement with regard to that covered security, and the like. The types of misconduct specified in those two provisions. Counsel, what do you do with our statement in Kershaw? And I know you try to distinguish it. Sure. But it very explicitly says removal in jurisdiction to deal with removed cases is limited to those precluded in the terms of subsection B. That's right. And that was the very argument that was raised there. Well, the Court said it both ways in Kershaw. It said it that way, that the two provisions, the scope of them is identical. But it also said that they were identical in that they both require certain types of misconduct. Sotomayor, when I read the opinion, every time it related to itself to 1 or 2, it would say something like, like 1 and 2, or 1 and others. It would not limit itself to just 1 and 2. I think it was talking about the types of misconduct at issue in 1 and 2. And the reason I think that is because the specific argument that the Court was considering in Kershaw was the argument that the plaintiffs made, that the case did not belong in Federal court because it didn't involve the purchase or sale of a covered security. The defendants responded, even if true, that's an argument about preclusion under subsection B, not an argument about removal under subsection C. Do you really think that whoever wrote this removal provision thought about all this stuff that you're telling us now? I'm not sure that they thought about the rule of the last antecedent and the like. But I do think that they set out to do what you say this does, and they decided this is the way we're going to do it. It is so far from reality that it really strains credulity. I think even if you think that our reading is a little bit of a stretch, I think the contrary reading is also a little bit of a stretch. I think all the readings that everybody has given to all of these provisions are a stretch. I'm serious. Is there at a certain point at which we say this means nothing, we can't figure out what it means, and therefore it has no effect, it means nothing? Can we not say that we have to say it means something? I would caution the Court against saying it means absolutely nothing. I do think that if the Court is concerned about the policy arguments that Petitioners raise, which we think are very important arguments, and based on the findings of fact in Slusa, they are things that Congress was concerned about, we think that our removal argument gets to essentially the same place as a policy matter, but with a much more plausible textual basis. Breyer. The problem, I mean, I don't think, I don't find this as confusing as, I mean, I might be wrong in how I'm looking at it, but as Justice Alito, I'm thinking the drafter is given a task, and his task is to do two things, economically, efficiently. I mean, that is efficiently with words. One thing he has to do is get rid of these State actions. That's one. And the second thing he has to do is to remove the Federal Act cases into Federal court, okay? And that's whether they're mixed or not mixed or so forth. If he was given that task, this is the language that does it. But I would expect there would be a report, and in this report there would be an explanation such as you gave me of the word involving. And my guess is there is no such report. That's correct. That moves me. There is no such explanation, but there's also no contrary explanation that we're aware of. Well, that's true. If I could add two more textual points that support our reading of the statute. If what is meant is the contrary reading, any covered class action of the sort that's specified in subsection B, it's not clear what the words involving a covered security would be doing in that sentence. At best it would be superfluous, and at worst confusing and distracting. Thank you, counsel. Mr. Goldstein. Thank you, Mr. Chief Justice, and may it please the Court. When the Petitioner's lawyer stands up and says in the first minute that his reading is obtuse, and when the Solicitor General's lawyer spends the entire time on an argument that isn't in any of their briefs in the case, you know that the lawyers are scrambling to try and figure out what the statute means. And the way we think you would resolve that is to recognize that these words actually mean something. They may target a null set. They may not accomplish anything, but this Court has said in cases like Manning that if Congress is going to change this kind of law significantly, you don't find elephants in mouse holes. You don't say that obtuse language disrupts and takes away from the State courts a longstanding form of jurisdiction, and that's what the other side wants to happen here. The Securities Act of 1933, unlike the 34 Act, always has provided for State court jurisdiction. That is the way it has always been. And if Congress wanted to disrupt that and get rid of that, it would say so quite expressly. I can see the importance of deciding the removal issue here, because it's central to the interpretation of the question, the answer to the question before us. On the other hand, as Justice Ginsburg pointed out, the case wasn't removed. Could the clear opinion be written and reserve the removal question? Well, Justice Kennedy, I have learned that the answer to the question, can the Supreme Court do X, is always yes. You can write an opinion that says we agree, for example, with the government and the Respondents that this language at the very least isn't clear enough to accomplish this result. We reserve for another day the removal question to be and that honestly as a matter of jurisprudence is probably the right thing to do. You are talking about two things. They didn't remove it and it's not in the question presented. And if you want to signal to the lawyers how it is that we are supposed to litigate these cases, that's probably not the best signal to send. On the other hand, it's true, for example, that if the Court were to understand the Kirchherr decision that we do and the structure between B and C and 77P as having a parallel in VA, one could effectively resolve the removal question, but you could only essentially resolve it in the favor of non-removal. It would be very hard, I think, to write an opinion, honestly, that says what should happen here is these cases should be removed under 77P. Mr. Goldstein, speaking of gibberish, are we stuck with gibberish your way, too? I mean, it seems like it's gibberish all the way down here, because under your version, as I understand it, VA, that first accept clause is superfluous. It doesn't do anything. And also we render involving a covered security that language potentially superfluous in C. So help me out with that. And I know we generally, you know, nobody likes gibberish, but it is our job to try and give effect whenever possible to Congress's language. It's not for us to assume that Congress's language means nothing and it was a waste of time. It went through bicameralism and presentment, and normally respect for the legislative process dictates that we afford some meaning to these words. Fair enough. I will say, however, just to be clear, that you do have a background presumption that Congress would do something like this clearly, and these are conforming amendments. To be sure, if you decided that my reading just came up with nothing and his was perfectly sensible, we would have a problem. But doesn't yours indeed come up with nothing with respect to that first accept clause and also with respect to the provided involving covered securities? Sure. So two things about that. Help me out with that. Okay. So the phrase, except as provided in section X with respect to subject matter Y, appears throughout the U.S. Code a bunch of times. I'm talking about this one. Okay. I promise. Let's get there. Okay. Mixed cases is one example. Also the cases like those described in your Merrill Lynch v. Manning decision. So there are cases that involve either a State law claim that isn't expressed that relies on the Securities Act, the 33 Act for the substantive standard, or a case that combines a 33 Act case with also a State law case. And so. Help me out. Okay. So what would happen is that if Congress had not amended VA, what you would have had is in 77PB a prohibition on a complaint that combines a State law. It's a straight prohibition, this Court has said, in Kirchherr. It's not, it has nothing to do with jurisdiction. It's a preclusion provision. Fair enough. It is much closer to a jurisdiction. You don't need it. It is much closer to a jurisdictional provision than the definition in F-2. It shall not be moved. This Court has said it's a preclusion provision. So we're stuck with that. All right. Work with, just let me, work with me, all right. It can't refer to C because we have another except clause that refers to C. So it has to refer to B, but there's no point in referring to B if Kirchherr's right and this is just a preclusion provision. I would disagree. And so if you were to ask, to Justice Breyer's point, if you gave a draft or a mission, what would they do? If I, if this is the mission and that is B under 77PB, what we're going to do is bar complaints, call it preclusion, bar complaints that combine a State law claim that involves a covered security and is a covered class action with a, some other claim. So a 33 Act claim. And if what you want to do is avoid confusion about what you do with the concurrent jurisdiction under VA, because that same complaint would both be precluded under PB and within the concurrent jurisdiction of the States under VA, it makes perfect sense to have a conforming amendment that says, okay, the concurrent jurisdiction doesn't include the cases that we just barred in PB. But that's stating the blendingly obvious. Oh, well, you know, to Mr. Cattigall's point about closing doors and windows and everything, it is not superfluous. It's closing a door twice. It's not closing a window. It is not superfluous, sir, because remember, jurisdiction says the courts don't have jurisdiction no matter if the defendant invokes this provision or not. It is a categorical instruction to the courts, whereas PB is something that's not. You haven't helped me much there, but maybe you can help me with the language in C involving a covered security. How is that not superfluous in your reading? It is only an indication of where it is that you look in P, in 77P, because there are a lot of provisions that are in 77P. So if you say look at 77P, what happens to covered securities? If I just – if you just take the language in these terms and you ask what does 77P provide with respect to covered securities? I think we're speaking past each other again, because I'm referring to, I'm sorry, 77PC, right, which says any class – covered class action brought in a State court involving a covered security as set forth in subsection B, the government's position, is that the words involving a covered security must be doing some work. And it seems to me – I'm not sure what you're reading from, sir. You're talking about in VA – The removal provision. Of VA. No. Okay. Of 77PC. Okay, great. Okay. Still PC, right? Any covered class action brought in a State court involving a covered security as set forth in B, the government makes the argument that if, in fact, all you were doing was referring to B, including State law classes – State law causes of action, you wouldn't need involving a covered security. The language would be superfluous. Well, there would be superfluity on anybody's reading, because brought in any State court would also be arguably superfluous. Any covered class action would be superfluous. If all you're doing is saying pick up the cases in B, what Kirchherr says, and I do think it does, Justice Sotomayor is right, that it's – No, no, because we're talking about removal here. So you have to identify cases that are in State court in order to do anything. Okay. Well, then any covered class action, okay? Any covered class action could be one in Federal court. So it makes sense to put it in – No, I'm just saying in terms of it would be superfluous as well. I don't see why. Any covered class action brought in State court may be removed. That makes sense. Well, everything – well, every B, everything that is in B is with respect to a covered class action. To the point that this statute is not drafted with incredible precision, what Kirchherr says is going on in Slusa is in B we're going to ban a set of cases. In C we're concerned that we might have recalcitrant State courts. The cases that are banned in B can be removed under C. And I don't even think this last antecedent argument would help the other side very much for two reasons. The first is the last antecedent is covered security. It is not involving a covered security. And the second is you have to ask Justice Kagan when he's – when they refer to involving a covered security, it's not just involving a covered security in the air. It is an action involving a covered security. And that action has to be one that's based on State law. I'll add to that. I mean, as I stare at it a little bit more, I wish I had asked Mr. Kedem and Shelby subject to subsection B, because that suggests that it has to be dismissed. And you wouldn't want to dismiss the kind of cases that Mr. Kedem wants to remove. And his whole point is that you wouldn't dismiss them. Kagan. But that would make – and Shelby subject to subsection B superfluous and essentially mean nothing. Right. So just to circle back around to the question, Justice Alito, you've pointed out that maybe this thing does nothing at all. That may well be true. We do think it picks up the mixed cases. The mixed cases did exist previously, but – What sense does that – what sense does that make? The State courts have concurrent jurisdiction over 33 Act claims, except if a lawyer is foolish enough to include in the State court complaint State claims that fall within the prohibition. What sense does that make? Well, Justice Alito, it would make sure that there isn't confusion. It would resolve an ambiguity. It's not intended to do very much. It's a conforming amendment. We don't think that the statute – this provision, which isn't discussed anywhere in the legislative history at all, is intended to accomplish very much. All it's intending to do, we think, and it obviously didn't do it, is – Which provision are we talking about? The VA amendment of the jurisdictional provision. So are you answering the road to nowhere? Yes. I'm answering the road to nowhere. We don't think that it is a road to nowhere because it does make clear that the courts, without regard to whether or not the defendant invokes P.B., do not have jurisdiction. It actually accomplishes that result. Is it just matching the jurisdiction to the preclusion and removal? Right. If you told someone to write a statute that says, modify VA to make sure there isn't jurisdiction over the cases we just banned, you would use this exact language. And the one thing I do want to be clear on is that this phrase, we do start just with the simple text. That phrase, except as provided in section X, with respect to subject matter Y, everywhere in the U.S. Code it's used, refers to the person to a rule. It's the opposite of a notwithstanding clause. It always has some measure of superfluity. What it's doing is just you've got two different provisions and it tells you which one controls. A notwithstanding provision. Ginsburg. Why would Congress want to do that, given that if the Federal claim is in Federal court, there are, as Mr. Katchel pointed out, all these restrictions on counsel and who's the representative party. You have the same Federal claim in State court and none of those restrictions apply. That's the usual rule, Justice Ginsburg. And remember, we have a really good indication that's what Congress intended because that's the PSLRA. Congress, when it wrote the PSLRA, against the backdrop of State law, State court secured the 33 Act class actions, wrote it to say that the procedural protections apply in cases that are subject to the Federal rules of civil procedure. What it decided to do is it matched the same compromise that's in the 33 Act itself, which is it allowed these cases to be decided in State court. And as we explained, State courts have their own discovery stays. They have their own discovery stays. Breyer. I see that, but look, I have one textual question on your side. My textual question, which we're discussing now, is we go to v. And let's look at the second part, which says except as provided in PC, you can't remove it. So that means if it's provided, except as provided in PC. And it's talking about the 33 Act. All right. So now let's go over to C. And since they're talking about removal of a 33 Act case. Verrilli, A case with a 33 Act claim. Breyer. With a 33 Act claim. A case with a 33 Act claim. We look to C and say, C, therefore, must refer in part to cases with 33 Act claims. And if that's so, since involving a covered security, if it refers to all of B, including the State law problem, there is virtually no scope. No, that's not true. Ah, I get it. I get it. Here's what I think happened. Is this the answer? Yeah. So SLUSA is a door-closing statute. Yeah. It looks back to the PSLRA and says we've had a statute that's been evaded a bunch. We just don't want it to happen again. So we're going to ban a set of cases that have shifted from Federal to State court. Those are 34 Act cases by and large. We're going to ban those. What might a clever plaintiff's lawyer do? Well, what they might do is slap a 33 Act claim on here and say it's still within the concurrent jurisdiction of the State courts. So we're just going to make clear that's not true. That's all that the provision says. Okay. Now, this is my choice, then. All right. The choice is reading v for 33 Act, back to C, and when they talk about C, which refers to B, they either mean all of B, which is a case with a State law claim that is a 33 Act claim in it, and also a 33 Act claim, that's your view, or the government's view is that involving just refers to 1 and 2 in B, and so it refers to 33 Act claims sitting there by themselves in State court 2. Right. That's my choice, right? Yeah. And I've got to see which of those two makes more sense in terms of the Act, which is why I started out with I want to know what they want to do with 33 Acts, because if the 33 Act is a big deal here, then the S.G.'s position looks better. Sure. And if it's not much of a deal, throwaway, then yours looks better. Is that right? Yes. So here's why you know that the 33 Act is the tail and the 34 Act is the dog. The legislative history and the findings that my friend talks about refer to the shift of cases from Federal to State court. These are not cases that shifted. The 34 Act case shifted. The 34 Act requires you to file in Federal court. What happened is people instead brought securities fraud cases under State law in State court to avoid the PSLRA. Fine. But that's not what happened here. Our case was under the Securities Act, the 33 Act. It was fine in State court before the PSLRA. Congress didn't change that in the PSLRA. It's not an evasion of any existing standard. All the rules that apply to the 33 Act continue to apply to it. So what Congress was concerned about is a body of cases moving out of Federal court to State court. These cases have been within the concurrent jurisdiction, non-removable, of the State courts since the day the statute was enacted. That's the compromise. A plaintiff files a third – files a claim in State court under a State law cause of action that mirrors the 33 Act in the respects that are set out in the statute. The State court can't entertain that. That is correct. Am I right? Okay. Now, given that, why in the world would Congress want the State court to be able to entertain the real thing, an actual 33 Act? Because what Congress is targeting is it just doesn't want this resolved under State law. It wants it resolved under the 33 Act. It does want these nationally traded securities cases to be litigated under Federal law. I thought what it wanted was it to be resolved under Federal procedural law. No, that is not uniformly true. Remember, we are talking about a concern of the evasion of the PSLRA. And Congress quite – They wanted to resolve in accordance with the PSLRA. Right. And the PSLRA – Which wouldn't apply in State court. Exactly right. And so that's our point, and that is this is not an evasion of the PSLRA. If Congress wanted to delete the phrase in the PSLRA in cases that are subject to the Federal rules of civil procedure and extend the PSLRA to the State court, or if it wanted to make all these cases removable, or if it wanted to refer to a definition, there are ten different easier ways and more clear ways, rather than to pick up a phrase that is not used in this way in the U.S. Code anywhere at all. I did want to just respond to an anomaly that's akin to the one that you just described as possible that my friend talks about. He says this. Look, under the Respondent's view, if what you did was combine a 33 Act claim with a State law claim, then we admit that case would be litigated in Federal court. That is not correct. Under 1441, this is what would happen, is that the case would be removed to Federal court, and under 1441c would mandate severing out the prohibited State law claim, and the case would be remanded to State court, and it would be litigated in State court as a matter of law. Alitoson The whole mixed case thing doesn't make the first bit of sense to me. That you've got the Federal, you have the 33 Act claim, and you have the prohibited State Act claim in State court. So then the State court has no jurisdiction whatsoever. What's going to happen? The defendant moves to dismiss. The plaintiff says, okay, fine, I dismiss my State Act claim. Or the judge is going to say, oh, it's too late, you combine them to start out, the whole thing is dismissed. And then if the statute of limitations hasn't run, the plaintiff can just come back and file the Federal, the 33 Act claim in State court by itself, right? Yes, but that's only because of SLUSA, because what SLUSA is doing is barring the State law claim. That wouldn't be true if SLUSA didn't exist. And I just think that you just have to look – this is a narrow provision not discussed in the legislative history. You can't ask it to do the world, which is to undo the jurisdiction of the 33 Act that has existed a long time, and that is, it's another anti-evasion principle. I do want to respond as well to my friend's statement that he says the exact opposite thing. He says his position produces a direct parallel between the 33 and 34 Act, and then Justice Ginsburg says it treats the 33 and 34 Act wildly differently. It does treat them quite differently, and that is, he is pointing to statements in the legislative history that suggest that some members of Congress believe that all securities cases would be litigated in Federal court. But he leaves behind all of the non-class actions, and he picks up cases that SLUSA clearly was not intended to apply to, and that is non-covered securities. SLUSA is quite clear about this, that it is intended to respond only with respect to the nationally traded securities that are defined as covered securities. But this reading somehow picks up, according to the Petitioners, all of the covered class actions, even if it's not a nationally traded security at all. And it would be incredibly weird to write a statute that says, except as provided in 77P with respect to covered securities, and to do something radically different from what 77P does with respect to covered securities. What it does is it causes them to be dismissed, not removed, and it applies only with respect to those that involve nationally traded securities, and their reading doesn't. It is really, really obtuse. It is an extraordinarily unusual way to accomplish this result, which is a big result. Mr. Cavill believes the statute does something quite important.  And you just don't — your jurisprudence helpfully tells the Congress, if you want to do something like that, do it the simple way, say, as defined in, or say it's removable, or say it's within the exclusive jurisdiction. If you find out that it is — if you believe, Justice Gorsuch and Justice Alito, that this — our reading would produce — would apply to a null set which we disagree with, nonetheless, it is the case that we do give meaning to the phrase. It wouldn't pick up any cases, but their reading is not — the words that Congress used aren't nearly clear enough to accomplish that result, if there are no further  Sotomayor, what do you think — what would be the null set if you read the government's reading of the removal — the involving — if you read it, it's — It's reading today? It's reading today. Okay. I assume you understand it. Yes. All right. If we read it the government's way, what would we make — what would be left of the second accept clause in — in 77VA? The removal accept clause? Yes. So — Second accept clause. So the second accept clause, just to walk this through, says basically whatever we're doing in 77PC controls. Right. Okay? And I do think it's very useful that except is provided and should be read the same way in 77VA, so it does, you know, tell you to look somewhere else. But if you look at the way the government does, it says you can't remove these cases in A, right, so you can't remove them, but C says you can remove them. So is there anything, then, that is not removable? Why write the second accept clause at all? Well, it is the case that it would be completely unnecessary because C controls. I do think probably in the — a point in the government's favor that ultimately is in our favor is that there are parts of V that don't do anything. Okay? And the — the removal provision is an example of that. If you didn't have the amendment to the removal provision, you would still know that you could remove under PC. They're just closing doors, locking them, crossing Ts and dotting Is a couple of times. That's how this provision works. Don't ask it to do more than it was intended. Thank you. Could I ask you, Mr. — Mr. Goldstein, also on this C provision? And it really ought to be a question for Mr. Kedem, but he's sat down. But I don't want you to agree with me just for the sake of agreeing with me. Okay. But if I understand what he said, it's these class actions with this last antecedent principle, you're only referring to 1 and 2, so now you make those class actions removable. But the way this provision works, and you think kind of that makes sense, right? We would want those — those actions to be removable. Be consistent with Congress's other purposes. No, but — But — I'm sorry? I don't think that, but you might. Okay. I'm saying what — Hypothetically. In his view, right? Okay. But then it says, and shall be subject to subsection B. And all that subsection B does, the way this C provision works is it makes a category of cases removable only so that a court can dismiss them. That's the point of subsection C. It's like they were worried that State courts wouldn't just dismiss these actions, so it made them removable to be dismissed. But then you're getting those cases up there. You say, okay, we'll get them removable because these cases really ought to be in Federal court, but under C, now they have to be dismissed. That's right. I will say — I'll give you the answer that I think he might. And that is, what he would say is, okay, subject it to subsection B, and some of them get dismissed, and the rest of them aren't subject to it. But that's just not the structure of this statute, and that's not what Kirchherr says. Kirchherr says that this is an anti-recaltricence — recaltricence, whatever — provision, that if State courts just aren't obeying the statute, there isn't any indication that it was intended to pick up a set of cases and deposit them in Federal court to litigate them. It has to be. It has to be, because the mixed case ends up in part being in Federal court. It does not, because under 1441c, it gets remanded. The Federal part of the case, as a matter of law, gets cleaved off and gets sent back to State court. It does not stay and get litigated in Federal court. Mr. Cattaglia is just wrong about that. Sotomayor, what provision are you citing? 1440 — 20 U.S.C. 1441c, it's the removal provision. So what happens is, if you have a mixed case, the combined Federal and State cases that are subject to P.B., it gets removed, and Federal law, 1441c, says if you have a otherwise non-removable provision, combined — claim, combined with a removable claim, that what you do is you break them in half and you send the non-removable case back, claim back. And so that's a — Breyer, that's major. Yes. I mean, either on the one hand, your view, this is designed just to get rid of the State action. Yes. On their view, it is designed to do two things. One is to remove the Fed part to the Feds and also to get rid of the State. Right. And so if you just — Is there any history? Not — not about the amendment to v. There's no history. And we don't think there's any history that suggests moving the cases to Federal court. Thank you. Thank you, counsel. Four minutes. Mr. Katyal. Thank you. Four points. First, Congress took the affirmative step of modifying the preexisting concurrent jurisdiction provision in Section 22. We're the only ones who give that some meaning. Justice Gorsuch, this is not about surplusage, the canon of surplusage. This is obliteration. They can't give you an explanation for what Congress did when it added those 12 words. And that's why my friend says, oh, there's some canon against doing — canon that you have to do things a simple way. There is no such canon in this Court's jurisprudence. The closest, as Justice Sotomayor said, is the presumption about concurrent jurisdiction. But that presumption has never been held to apply when a statute isn't silent. Those are only when the Congress is silent. This is one in which Congress has affirmatively taken the step to remove 12 words to remove some subset of what was preexisting jurisdiction in the state courts. And in addition, as this Court in Kirchherr said, when you don't have a long history of state court adjudication in the area, presumptions about preemption don't apply. Indeed, presumptions about preemption, Justice Breyer, your opinion and Geyer, says they don't apply when you have an express statute that deals with preemption. And I think the same analogy is true here. You have a specific statute that deals with — which deals with the amount of jurisdiction, so I don't think this Court could apply the presumption about concurrent jurisdiction. Second, Justice Breyer, you asked about the legislative history, and Justice Alito, you asked, who do you think — do you think the person who wrote this statute set out to do what you think you're saying it did? And we're the only ones who are telling you a story that is in the legislative history itself. The first line of the conference report, quote, Title I of SLUSA, makes federal court the exclusive venue for most securities class action lawsuits. The manager in the Senate, Senator D'Amato, and the chair, quote, there shall be a uniform standard and there should be a uniform procedure, and that's why we moved these nationally traded securities to a federal forum. President Clinton's signing statement, quote, since the uniform standards provided by this legislation state that class actions generally can only be brought in federal court, will be governed by federal law, clarity on the federal law to be applied is particularly important. There is nothing in there saying this is only about the 34 Act. This is, my friend, on the other side's invention. Congress affirmatively took the step to modify the 33 Act jurisdictional provision, not just the 34 Act. Justice Kennedy, this is my third point. You asked about removal and whether or not, if you didn't accept our view of 22a, would that mean that, you know, we'd effectively be out of look. And I think you shouldn't reserve that question because of the reasons that my colleague from the Solicitor General's office said, and indeed it may take years for another case to come up precisely because there's a bar on interlocutory appeals from removal decisions, as this Court in Kirchherr made clear. And in addition, the Ninth Circuit, in a case called Rea v. Michael Storrs in 2014, said when this Court, the Supreme Court, makes removal available for the first time, then we as litigants can go and seek that removal. There's a lot of precedent which barred us from seeking removal before, but obviously we would do that if this Court were to accept the alternative reading. And last and finally, ultimately you were left with Justice Alito's question, what sense does their statutory reading make? Why would bringing a State court count oust a plaintiff out of State court when a mixed one would not? And Justice Ginsburg asked, why would Congress, when they're so concerned about procedure and things like abusive litigation and serial plaintiffs and massive attorney's fees, and took all these steps to regulate that in the Federal court context, why would they just leave the back door gaping and wide open? That is not the way to read a statute. I understand the statute's a hard one to read, but we're the only ones giving it a reading that, A, makes sense and that is, B, consistent with the legislative history, and C, most importantly, is textual. We give effect to those 12 words. They obliterate them. Thank you, counsel. The case is submitted.